UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER TITUS TYRA, JR.,

    Plaintiff,

v.    Case No. 23-cv-63-pp

ETHAN WELLS, MYRA ROCHA
and JOHN DOES 1 and 2,

    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

  Christopher Titus Tyra, Jr., who is incarcerated at Milwaukee County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his civil rights. This order resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

  The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On January 18, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $10.84. Dkt. No. 5. The court received that fee on February 8, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

  A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff is a pretrial detainee at the jail. Dkt. No. 1 at 2. The complaint alleges that the plaintiff suffers from acute glaucoma in both of his eyes. Id. The plaintiff says that John Doe 1, an optometrist at the jail, saw him on June 24, 2022, two weeks after the plaintiff's arrest, and performed an eye exam. Id. That exam confirmed the plaintiff's "rel[a]tively high ocular pressures indicative of glaucoma." Id. The Doe optometrist prescribed the plaintiff eyeglasses and eyedrops to reduce the pressures and referred him to an offsite ophthalmologist for tests the optometrist could not conduct at the jail. Id.

While the plaintiff waited to receive his glasses, he asked various nurses at the jail about the eye drops the optometrist had prescribed. Id. at 2–3. The nurses told him they did not see an order for eye drops. Id. at 3. On August 31, 2022, the plaintiff received his glasses but still had not received his eye drops or been sent offsite for more testing. Id. On November 11, 2022, the plaintiff again saw the jail's optometrist with continued complaints about his glaucoma. Id. The optometrist told the plaintiff he had "failed to specify which eyedrops he prescribed[,] which caused [the plaintiff] to not rec[ei]ve them." Id. The optometrist prescribed the plaintiff Latanoprost Ophthalmic Solution and entered another referral for an offsite ophthalmologist visit, which the plaintiff says he had a week later at Aurora Health in Brown Deer. Id. The ophthalmologist confirmed the optometrist's diagnosis of glaucoma and agreed with the prescription the optometrist had written for the plaintiff. Id.

The plaintiff asserts that because of "the lapse in prescribing eye drops" and providing the offsite ophthalmologist appointment, he suffered "irrepairable [sic] damage to his vision." Id. at 3–4. He asserts that "all the defend[a]nts actions and failure to act" violated his rights under the Fourteenth Amendment. Id. at 4. The plaintiff alleges that John Doe 2 is "in charge of approving and denying refferals [sic] to see off ground specialist." Id. He seeks $400,00 in compensatory damages from each defendant for the costs of his "future medical bills, laser eye surgery and pain and suffering." Id. at 5.

C. <u>Analysis</u>

The plaintiff is correct that because he was a pretrial detainee at the time of the alleged events, the court analyzes his claim that he was denied adequate medical care as a claim of deliberate indifference in violation of the Fourteenth Amendment. <u>Miranda v. Cty. of Lake</u>, 900 F.3d 335, 352 (7th Cir. 2018) (citing <u>Kingsley v. Hendrickson</u>, 576 U.S. 389 (2015)). To proceed on this claim, the plaintiff must show that 1) "the 'defendants acted purposefully, knowingly, or perhaps even recklessly'" and 2) "the defendants' actions were [not] 'objectively reasonable.'" <u>Pittman by & through Hamilton v. Cty. of Madison, Ill.</u>, 970 F.3d 823, 827 (7th Cir. 2020) (quoting <u>Miranda</u>, 900 F.3d at 353–54). Neither negligence, gross negligence nor medical malpractice amount to deliberate indifference. <u>See</u> <u>Miranda</u>, 900 F.3d at 353. The plaintiff's allegations instead must show "'more than negligence but less than subjective intent—something akin to reckless disregard'" to proceed on a Fourteenth Amendment claim. <u>Id.</u> at 353–54 (quoting <u>Gordon v. Cty. of Orange</u>, 888 F.3d 1118, 1125 (9th Cir. 2018)).

The plaintiff alleges that in June 2022, the John Doe optometrist examined his eyes, prescribed him glasses and eyedrops and referred him for an offsite appointment with an ophthalmologist. He says he received his glasses about two months later but did not receive eye drops or the offsite appointment. He complained about those things to nurses at the jail, and in November 2022 he again saw the optometrist. The optometrist explained that he had written an incorrect prescription after the first examination, which was

5

why the plaintiff had not received his eye drops. The optometrist corrected the prescription and again referred the plaintiff to an offsite ophthalmologist. The plaintiff soon after received the drops and saw the ophthalmologist, who confirmed the optometrist's assessment and prescription. The plaintiff asserts that the five-month delay in receiving eye drops and the ophthalmologist visit between the first and second optometrist appointments led to irreparable vision damage.

These allegations do not state a claim of deliberate indifference against the John Doe optometrist. The complaint alleges that the Doe optometrist conducted a thorough examination of the plaintiff's eyes, correctly diagnosed his glaucoma and referred him to a specialist who could complete additional tests that the optometrist could not at the jail. The plaintiff says the optometrist made an error that caused a delay in receiving his eye drops and an ophthalmology appointment. But the complaint does not allege that the optometrist *intentionally* or *recklessly* issued an incorrect prescription or purposefully denied him the offsite appointment. Nor do the allegations suggest the optometrist acted objectively unreasonably. At most, the complaint suggests that the optometrist mistakenly or negligently prescribed the plaintiff the incorrect eyedrops, which would not amount to a constitutional violation. See Miranda, 900 F.3d at 353; see also Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016) ("[W]ithout more, a mistake in professional judgment cannot be deliberate indifference."). The optometrist corrected his mistake at the November 2022 appointment, and the plaintiff

soon thereafter received his medication and the offsite referral to the ophthalmologist, who confirmed the optometrist had provided a correct diagnosis and prescription. Even if the optometrist's mistake or negligence caused the plaintiff irreversible harm, that does not mean that he violated the plaintiff's constitutional rights. The court will not allow the plaintiff to proceed on a Fourteenth Amendment claim against the John Doe optometrist.

The complaint contains little information about the second John Doe defendant. In a single line at the end of the body of the complaint, the plaintiff says the second John Doe defendant "is in charge of" approving and denying offsite referrals. Dkt. No. 1 at 4. He alleges nothing further about this defendant. To state a claim under §1983, the complaint "must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000); see also Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017) (noting that to establish liability under §1983, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct").

Even if the court infers that Doe 2 is the *only* person at the jail who schedules offsite appointments, the plaintiff has not alleged how or whether Doe 2 was personally responsible for him having to wait to see the offsite ophthalmologist. He does not allege that Doe 2 *intentionally* or *recklessly* denied the optometrist's referral. Nor does he allege that Doe 2 was personally involved in his offsite recommendation at all. It is possible the plaintiff did not see the ophthalmologist until November 2022 because of the same mistake that
7

the optometrist made after the June 2022 examination. It is possible the referral was never communicated to Doe 2 to approve or deny, in which case he or she could not be liable for the delay in the plaintiff's offsite appointment. The complaint does not include enough information to answer these questions or to determine whether Doe 2 may be held liable for the delay in the plaintiff seeing the ophthalmologist. Even if the court were to infer that Doe 2 *is* responsible for the delay in seeing the ophthalmologist, the complaint says the ophthalmologist told the plaintiff that the jail's optometrist correctly diagnosed his glaucoma and prescribed him proper eye drops. This suggests the plaintiff suffered no harm from the delay in seeing the ophthalmologist, who provided no different or additional treatment than the optometrist did. The complaint's scant information about Doe 2 does not even suggest a claim for relief against that person. The court will not allow the plaintiff to proceed against Doe 2.

The complaint also names Ethan Wells and Myra Rocha as defendants. But the body of the complaint does not contain *any* allegations against either of these defendants; it does not even mention them. The plaintiff does not say who the defendants are, describe their roles or jobs at the jail or explain how they were involved in his medical treatment, if at all. The plaintiff generally alleges that "the defendants" violated his rights under the Fourteenth Amendment. But like his claim against Doe 2, those vague allegations do not sufficiently explain what Wells or Rocha *personally* did or failed to do did that violated the plaintiff's rights. See Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (affirming that "vague phrasing" in complaint that "'one or more of the

Defendants' had engaged in certain acts or deprived [plaintiff] of his constitutional rights . . . does not adequately connect specific defendants to illegal acts"). The complaint does not state a claim against those defendants.

The complaint does not state a claim against any defendant for the reasons explained above. But it is possible that, with additional information, the plaintiff may be able to state a claim against one or more of the defendants. The court will give the plaintiff an opportunity to amend his complaint to correct the deficiencies outlined above and better explain his claims.

The court is enclosing a copy of its amended complaint form and instructions. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the

court and each defendant with notice of what each defendant *personally* did or did not do to violate his rights.

The amended complaint takes the place of the original complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to support his claims.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **March 31, 2023**. If the plaintiff files an amended complaint in time for the court to *receive* it by the end of the day on March 31, 2023, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on March 31, 2023, the court will dismiss this case based on the plaintiff's failure to state a claim in the original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

10

Case 2:23-cv-00063-PP   Filed 02/28/23   Page 10 of 12   Document 7

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$339.16** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Milwaukee County Sheriff and to Dennis Brand in the Sheriff's Office.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 28th day of February, 2023.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**